```
               UNITED STATES DISTRICT COURT
                        FOR THE
               MIDDLE DISTRICT OF PENNSYLVANIA
```

MICHAEL LUNA, JR.,            :
                              :
        Petitioner            :    No. 1:14-CV-01060
                              :
    vs.                       :    (Judge Kane)
                              :
WARDEN D. ZICKEFOOSE,         :
                              :
        Respondent            :

## MEMORANDUM

Michael Luna, Jr., while an inmate at the Allenwood United States Penitentiary ("USP-Allenwood") in White Deer, Pennsylvania, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241, in which he named D. Zickefoose, Warden of USP-Allenwood, as the Respondent.[1] Doc. 1, Luna's Petition. Luna claims that his due process rights were violated during the course of a prison disciplinary hearing held on June 13, 2012, at the Federal Correctional Institution in Forrest City ("FCI-Forest City"), Arkansas. Id. Luna was found guilty under prison regulations of Aiding and Abetting an Attempted Assault and received sanctions, including the loss of Good Conduct Time credit. Id. Luna requests that all sanctions imposed on him be discharged. Id. The petition is ripe for disposition and, for the reasons set forth below, the petition will be dismissed.

---

1. The Federal Bureau of Prisons's inmate locator service reveals that Luna is presently incarcerated at the United States Penitentiary in Florence, Colorado.

**I. Background**

On June 8, 2012, Luna was served with Incident Report No. 23131125 charging him with "Conduct which disrupts or interferes with the security or orderly running of the institution most like Rioting" in violation of "Code 199, most like 105." Doc. 6-1, at 5-6. The incident report relates to a disturbance that occurred at FCI-Forest City on May 31, 2012. Id. At the time of the disturbance Luna was an inmate housed in the A-1 Unit at FCI-Forest City. Doc. 1, Luna's Petition, at 3.

The incident report was prepared by Special Investigations Services Technician S. Davenport on June 7, 2012, and states in pertinent part as follows:

> [A]t approximately 12:58 p.m., Recreation Staff announced a large fight inside the Leisure Center of Recreation. A large group of approximately 95 Hispanic inmates who are housed in A-1 Unit identified as being members of the Barrio Azteca Security Threat Group, the Mexikanemi Disruptive Group, and the Texas Syndicate Disruptive Group overpowered the only Staff Member in the Gymnasium, M.Jackson, Recreation Specialist, pushing their way through a door, breaching the secured area from the gymnasium into the Leisure Center. Individual members of the groups began assaulting three Hispanic inmates identified as Mexican Nationals, while the others assisted by trying to keep staff away through physical force and unity, refusing to comply with staff orders to stop their assaults and actions. The Operation Lieutenant ordered munitions be brought to Recreation. Less Lethal and chemical munitions were deployed and proved effective in stopping the assaults and disturbance. During the incident, three inmates exited Recreation and entered the Compound area in pursuit of two inmates identified as members of the Tango Security Threat Group and one inmate identified as a member of the Partido Revolucinario Mexicano Security Threat Group. The Compound Officer stopped one of the inmates and placed him on the ground. Inmate Gonzalez-Sanchez, Manual, Reg. No. 56918-080,

jumped onto the Compound Officer's back and began assaulting him. Inmate Gonzalez-Sanchez was placed on the ground then inmates Diaz-Garcia, Johnny, Reg. No. 99233-179, and inmate Rodriguez-Gonzalez, Miguel, Reg. No. 14427-280, began assaulting the Compound Officer. Responding staff separated and removed inmate Gonzalez-Sanchez and inmate Diaz-Garcia from the Compound Officer and placed them in restraints. Once control was gained, all inmates in Recreation were placed in restraints. All inmates involved were photographed, medically assessed, and either placed in the Special Housing Unit or returned to their assigned Housing Units. Inmate Alvarez-Gordoba, Juan, Reg. No. 55354-208, inmate Santana-Leyva, Javier, Reg. No. 68556-008, were transported to the local hospital for further examination and treatment of injuries they sustained during the assault. As a result of the actions of each individual involved in the above disturbance, assaults were carried out on staff and inmates.

On May 31, 2012, a roster of A-1 unit was utilized and all inmates were accounted for as being in recreation except for one. The one inmate was Insuriaga, Francisco, Reg. No. 85807-080 who was scheduled for a medical trip departing the institution at 1:00 P.M. and was secured inside medical at the time of the disturbance.

On June 1, 2012, a review of the vicon video surveillance system was reviewed. The video clearly shows all inmates who were located inside the basketball gymnasium either participating in the actual breach of the door between the gymnasium and the Leisure Center or tried to push their way out of the gym into the Leisure center once the door was breached. With great effort, as indicated on video, staff were able to secure the door between the two areas preventing the remaining inmates who were trying to push their way into the Leisure Center from doing so. It is clear if it had not been for staff being able to secure the door, those inmates who were forced to remain in the gym would have also gained access into the Leisure Center and participated in the assaults/disturbance.

Based on the greater weight of the evidence, it can be concluded inmate Luna, Michael, Reg. No. 36954-280 participated in this incident.

Doc. 6-1, at 5.

On June 11, 2012, the Unit Discipline Committee referred the charge to the Discipline Hearing Officer ("DHO")and gave Luna notice of that decision and advised him of his rights at the DHO hearing. Id. at 6 and 8. Luna declined a staff representative for the DHO hearing but requested a witness, Jeffrey M. Jackson who was the Recreation Specialist mentioned in the incident report, to testify at the hearing. Id. at 9.

On June 13, 2012, Luna appeared for a hearing before the DHO and when asked to make a statement declined to do so. Doc. 1 Luna's Petition at 8-11. The DHO found that Luna received at least 24-hour advanced written notice of the charges, had been advised of his rights, and that he had waived his right to a staff representative. Id. The DHO indicated that Luna had requested that Jeffrey M. Jackson, the Recreation Specialist, appear as a witness, but the DHO denied the request because Jackson provided a written statement regarding the incident. Id. The DHO in ruling on the incident report considered the following documentary evidence: two photographs from the May 31, 2012 incident of Luna and inmate Alvarez-Gordoba; two photographs dated June 1, 2012, of inmates Andraca-Cardenas and Santana-Leyva; 162 photographs dated May 31, 2012, in the area where the institutional disturbance occurred; Bureau of Prisons Health Services Clinical Encounter forms of three inmates, dated May 31, 2012; Inmate Injury Assessment Form for Luna, dated May 31, 2012; seven Staff Injury

Assessment Forms dated May 31, 2012; memoranda from staff who responded to the prison disturbance on May 31, 2012; and a video surveillance tape of the disturbance. <u>Id.</u> After reviewing the evidence, the DHO changed the charge of "conduct which disrupts most like engaging in a riot" to "aiding and betting an attempted assault" and found Luna guilty of that offense. <u>Id.</u> In so doing the DHO stated in pertinent part as follows:

> This finding is based in part on the written report of [SIS Technician] Davenport, who states in summary, on June 7, 2012, at approximately 2:30 p.m., he concluded an investigation into a large disturbance which occurred on May 31, 2012 . . . in Recreation. Specifically, on May 31, 2012, at approximately 12:58 p.m., Recreation Staff announced a large fight inside the Leisure Center of Recreation. A large group of approximately 95 hispanic inmates housed in A-1 Unit, identified as members of the Barrio Azteca Security Threat Group, The Mexikanemi Disruptive Group and Texas Syndicate Disruptive Group overpowered the only staff member in the gymnasium, M. Jackson, Recreation Specialist. These inmates pushed their way through a door, breaching the secured area from the gymnasium into the Leisure Center. Individual members of the group began assaulting three Hispanic inmates identified as Mexican nationals, while the others assisted by trying to keep staff away through physical force and unity, refusing to comply with staff orders to stop their assaults and actions. . . As a result of the actions of each individual involved in the above disturbance, assaults were carried out on staff and inmates.
>
> On May 31, 2012, a roster of A-1 Unit was utilized and all inmates were accounted for as being in recreation with one exception, [Francisco Insuriaga] . . . A review of [a video of the disturbance] . . . clearly shows all inmates who were located in the basketball gymnasium either participating in the actual breach of the door . . . or tried to push their way out of the gym into the Leisure Center once the door was breached. . . You, Luna, Reg. No. 36954-280, were identified as having participated in this incident. . . .
>
> As you had no statement in an attempt to exonerate you

5

> of this charge, I find officer Davenport's account of this incident credible. . . As an inmate assigned to [A-1 Unit] and being in the gym, you were identified by staff as either participating in the actual breach of the door and gaining access to the Leisure Center, or attempting to push your way out of the gym but were prevented from doing so by responding staff. . . Both staff and inmates were assaulted as a result of this incident. . . .
>
> Upon your commitment to the [Bureau of Prisons], you participated in admission and orientation (A&O) wherein you were advised of Bureau of Prisons (BOP) rules and regulations and your responsibility to abide by these rules. You were also provided an A&O handbook which further details prohibited acts. Your participation in A&O and knowledge of BOP rules and regulations further establishes your culpability. Aiding and Abetting in attempted assault, regardless of the circumstances, is a prohibited act.

Id. The DHO issued his decision on June 20, 2012, which imposed the following sanctions against Luna: 60 days disciplinary segregation; 41 days loss of good conduct time; 180 days of loss of commissary, phone and visitation privileges; and a $200 fine. Id. The DHO informed Luna that he had the right to appeal the decision within twenty (20) days. Id. Luna received a copy of the decision on June 25, 2012. Id.

On July 9, 2012, Luna filed an appeal (Administrative Remedy No. 696333-R1) of the DHO's decision with the Regional Office of the Bureau of Prisons. Doc. 6-1, Exhibit 1 (Cunningham Declaration) ¶7; Attachment B (Report) at 11. This appeal was rejected on July 12, 2012, because Luna had submitted more than one continuation page. Id. Luna was advised that he had 15 days to resubmit his appeal. Id.

6

On August 22, 2012, Luna resubmitted his appeal by filing Administrative Remedy No. 696333-R2. Id. Luna's appeal was denied on October 16, 2012. Id. Luna did not seek further administrative review of that denial. Id. Instead he refiled Administrative Remedy No. 696333-R2 with the Regional Office and that request was denied because Luna had already received a denial from the Regional Office. Id. Luna then on December 10, 2012, filed an appeal (Administrative Remedy No. 696333-A1) at the Central Office/General Counsel level of the Bureau of Prisons. Id. Luna was instructed by the Central Office to resubmit the appeal setting forth the reasons for the untimely appeal. Id. Luna did not comply with that direction and took no further administrative action relating to the decision of the DHO dated June 20, 2012. Id.

**II.  Discussion**

Respondent argues that Luna's petition should be dismissed for failure to exhaust administrative remedies. Doc. 6. The Court has authority under 28 U.S.C. § 2241 to review disciplinary sanctions imposed by the Bureau of Prisons for violating prison regulations. However, this court may do so only after the petitioner has exhausted his available BOP's administrative remedies. United States v. Wilson, 503 U.S. 329 (1992); Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996). If a petitioner fails to exhaust administrative remedies,

the district court must dismiss the petition. <u>Callwood</u>, 230 F.3d at 634.

   The BOP has established an administrative remedy procedure, which is set forth at 28 C.F.R. § 542.10 et seq., whereby a federal prisoner may seek formal review of any aspect of his imprisonment.  Inmates must first informally present their complaints to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief. 28 C.F.R. § 542.13(a).  If unsuccessful at informal resolution, the inmate may raise his complaint with the warden for the institution where he is confined. <u>Id</u>. at § 542.14(a).  If dissatisfied with the response, the inmate may then appeal an adverse decision to the Regional Office and then to the Central Office of the BOP. <u>Id</u>. at §§ 542.15(a).  No administrative remedy appeal is considered to have been fully and finally exhausted until it has been denied by the Bureau of Prison's Central Office. <u>Id.</u>; Doc. 6-1, Exhibit 1 (Cunningham Declaration) ¶5.

   In this case it is clear that Luna failed to comply with the administrative remedy procedures set forth in 28 U.S.C. § 542.10 et seq.  Luna never sought appropriate review of the Regional Office's October 16, 2012, denial of Administrative Remedy No. 696333-R2.  Instead as noted above he merely refiled that administrative remedy with the Regional Office on November 20, 2012.

"[F]ailure to satisfy the procedural rules of the [Bureau of Prisons'] administrative process constitutes a procedural default." Moscato, 98 F.3d at 760-761 (citing Francis v. Rison, 894 F.2d 353,355 & n.2 (9th Cir. 1990); Sanchez v. Miller, 792 F.2d 694, 697 (7th Cir. 1986)). If a default renders the administrative process unavailable, review of a habeas claim is barred "absent a showing of cause and prejudice[.]" Id. at 761.

Cause is generally only established where the petitioner shows that "some external objective factor impeded" his or her efforts to comply with the BOP's administrative remedy provisions. See Murray v. Carrier, 477 U.S. 478, 488 (1986). As the United States Court of Appeals for the Second Circuit has noted, where "legitimate circumstances beyond the prisoner's control preclude him from pursuing his administrative remedies," cause is established. Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 634 (2d Cir. 2001). Luna has not explained his failure to seek timely review with the Central Office of the Regional Office's October 16, 2012, denial of Administrative Remedy No. 696333-R2. The court discerns no external objective factor which prevented Luna from pursuing his available administrative remedies.

Luna has not shown good cause for his failure to file a timely administrative appeal. Furthermore, even if Luna established cause, he has not established prejudice.

In <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974), the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. <u>Id.</u> at 563-67. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." <u>Superintendent v. Hill</u>, 472 U.S. 445-46 (1985); <u>see also</u> <u>Griffin v. Spratt</u>, 969 F.2d 16, 19 (3d Cir.1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. <u>Hill</u>, 472 U.S. at 457.

Luna has made essentially three arguments. First, he contends that he was not given adequate notice of the charges because the DHO found him guilty of aiding and abetting an assault instead of rioting. This contention is without merit because as long as an inmate has notice of the facts underlying the charge of which he is found guilty it does not matter that he is found guilty of a greater charge. See Northern v. Hanks, 326 F.3d 909, 910 (7th Cir. 2003); Borker v. Baltazar, Civil No. 14-0197, 2014 WL 5020602, *3 (M.D.Pa. Oct. 8, 2014)(Caldwell, J.). Second, Luna claims that his due process rights were violated when he was not permitted to call Recreation Specialist Jackson. Under Wolff a DHO has discretion to refuse to call a witness if the testimony of the witness is adverse to the inmate and the witness has provided a written statement. See Williams v. Menifee, 2006 WL 2481823, *6 (S.D.N.Y. Aug. 25, 2006); see also Candelario v. Vasquez, 2006 WL 341827. *3 (S.D.Ga. Nov. 28, 2006)(declining to call witnesses because they had previously provided written statements). Luna has not articulated what information he could have elicited from Jackson beyond what was set forth in Jackson's written statement. Furthermore, at the DHO hearing Luna did not make a statement or deny the underlying facts supporting the charge of aiding and abetting an assault. Third, Luna claims that the DHO was biased against him and not impartial. Under Wolff "the requirement of an impartial tribunal prohibits only those officials who have a direct personal or otherwise substantial involvement, such as a

major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary body." Rhodes v. Robinson, 612 F.2d 766, 773 (3d Cir. 1979)(quoting Meyers v. Alldredge, 492 F.2d, 306 (3d Cir. 1974)). Luna points to nothing establishing bias on the part of the DHO.

Luna was accorded all of his due process rights established by Wolff and there was some evidence to support the decision of the DHO in accordance with Hill. Consequently, Luna's petition must be dismissed.

Finally, because Luna is not detained because of process issued by a state court and the petition is not brought pursuant to 28 U.S.C. § 2255, no action by this court with respect to a certificate of appealability is necessary.

An appropriate order will be entered.

                              S/ Yvette Kane
                              Yvette Kane
                              United States District Judge

Date: February 4, 2015